# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

In Re:

**RICHARD M. CHAMP and
HELEN B. CHAMP,**

**Bankruptcy Case
No. 08-40272-JDP**

**Debtors.**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

Paul Ross, Burley, ID, Attorney for Debtors.

Kathleen A. McCallister, Meridian, ID, Chapter 13 Trustee.

### *Introduction*

Chapter 13[1] trustee, Kathleen A. McCallister ("Trustee"), filed a

motion to dismiss this case based upon the alleged failure by debtors

_____

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 1

Richard M. Champ and Helen B. Champ ("Debtors") to comply with a

Court order. Dkt. No. 56. Debtors opposed the motion. Dkt. No. 70. After

a hearing on the motion, and due consideration of the facts, law and

arguments of the parties, this Memorandum disposes of the motion. Fed.

R. Bankr. P. 7052; 9014.

### *Facts*

Debtors filed a chapter 13 petition on April 8, 2008; they were

represented by attorney Emil F. Pike, Jr.. Dkt. No. 1. Debtors proposed a

plan, and on October 23, 2008, it was confirmed. Dkt. Nos. 18, 31, and 34.

Debtors have made the required plan payments[2] for nearly five years, and

only approximately $1,130.40 remained unpaid as of the hearing date.

In their schedules, Debtors initially disclosed that Mr. Champ

received $1,123 each month in Social Security ("SS") retirement income;

they included no SS income for Mrs. Champ. Dkt. No. 1. Debtors' plan

proposed that they would pay $472.15 per month to Trustee, for a total

---

[2] At one point, Debtors apparently missed some payments due to Mr.
Champ having a heart attack. Trustee extended the payment period and Debtors
got back on track with making plan payments. Dkt. No. 70 at ¶ 3.

MEMORANDUM OF DECISION – 2

payment of $22,663.20 over forty-eight months, in partial satisfaction of a

total of $53,019.09 in unsecured debts.  Dkt. Nos. 18 at ¶ 1.1, and 32.

Trustee initially objected to confirmation of Debtors' plan, but the issues

were resolved by the parties and the plan was confirmed with certain

modifications, including an increase in Debtors' monthly payment

obligation to $910, and extension of the plan payment term to sixty

months.  Dkt. No. 34.  The Confirmation Order, approved by the parties

and entered by the Court, also provided:

> The Co-Debtor [Mrs. Champ] has applied for
> Social Security Benefits, should she be awarded
> these benefits or her income change in any other
> substantial manner, Debtors will file an Amended
> Schedule I to disclose said income.

*Id.*

Mr. Pike, Debtors' counsel, passed away in April, 2010; they

continued to make plan payments as scheduled.  In mid-2011, Ms. Champ

received a $37,914.40 SS lump sum award[3], along with a monthly benefit of

---

[3]  At the hearing, Trustee stated the SS award was $31,000, but the
amended schedule B indicates the SS payment was $37,914.40.  Dkt. No. 66.

MEMORANDUM OF DECISION – 3

$1,038.90 going forward.  Dkt. Nos. 66, 68.  Debtors called Trustee's office

at some point after receiving the SS award, but the record does not clearly

establish when the call occurred, or the substance of the phone

conversation.  Debtors provided a copy of their 2011 income tax return to

Trustee upon her request.  The return included a reference to the SS

monies.

On March 19, 2013, Trustee filed a motion to dismiss Debtors'

chapter 13 case.  Dkt. No. 56.  Debtors engaged new counsel, who helped

them file amended schedules B, C, and I, and to object to Trustee's motion.

Dkt. Nos. 63, 66, 68, and 70.  The amended schedule B reflected the SS

lump sum payment in the amount of $37,914.40, and the full amount of the

award was claimed exempt pursuant to Idaho Code § 11-603(3) on

amended schedule C.  Dkt. No. 66.  The amended schedule I included

monthly SS income for both Debtors, as well as a previously undisclosed

Lamb Weston pension benefit which pays $92 per month to Mrs. Champ.

Dkt. No. 68.

On July 15, 2013, the Court conducted a hearing on Trustee's motion

MEMORANDUM OF DECISION – 4

and thereafter took it under advisement.

*Analysis and Disposition*

**1.  The Parties' Arguments**

Trustee's dismissal motion alleges that Debtors failed to comply

with a Court order.  Specifically, she contends Debtors failed to obey the

directive in the confirmed plan requiring them to file an amended

schedule I if and when any SS award was made to them.  In fact, Debtors

did not amend their schedules until Trustee noticed the SS income in their

2011 tax return and filed the motion to dismiss.  Trustee argues Debtors'

failure to abide by the plan is grounds for dismissal.

Debtors counter with the argument[4] that they did not intend nor

attempt to hide the newly-acquired SS income, but instead, with the death

---

[4]  In addition to responding to Trustee's arguments, in their opposing
brief, as alternative relief, Debtors request:  1) that their plan be modified to
excuse any obligation to turn over any SS monies under § 1329 due to medical
issues and the loss of Mr. Champ's job, or 2) for entry of a hardship discharge
prior to completion of their plan payments under § 1328(b).  Dkt. No. 70 at ¶¶ 4-
5.  However, the Court declines to consider, or to even speculate about, the
merits of these requests until they are properly made via motion and the
required notice to parties in the case is given.

MEMORANDUM OF DECISION – 5

of their attorney, they simply did not understand what they needed to do about it.  They point to the fact that the SS income was included in their federal tax return, a document freely given to Trustee, and that they called Trustee's office to discuss their case, as evidence they were not attempting to conceal the awards from Trustee.  In general, Debtors plead a lack of sophistication concerning the implications of their changed circumstances in their bankruptcy case, and urge that the Court adopt a "no harm, no foul" response to Trustee's argument because the SS benefits must be legally excluded from any calculation of their current monthly income under chapter 13.

### 2.  Applicable Law and Disposition of the Arguments

As a condition to availing themselves of the benefits and protections of Title 11, Debtors were required to make a thorough and voluntary disclosure of all relevant facts about their financial circumstances.  *Ah Quin v. County of Kauai Dept. Of Transp.*, ___ F.3d ___, 2013 WL 3814916 at *4-5 (9th Cir. July 24, 2013) ("full disclosure in bankruptcy is essential to the functioning of the bankruptcy system, a fact that 'cannot be

MEMORANDUM OF DECISION – 6

overemphasized.'") (quoting *Browning Mfg. v. Mims (In re Coastal Plains)*,

179 F.3d 197, 208 (5th Cir. 1999)); *An-Tze Cheng v. K & S Diversified Invs.,

Inc. (In re An-Tze Cheng)*, 308 B.R. 448, 458 (9th Cir. BAP 2004) ("The

efficacy of the bankruptcy system depends in important respects on

accurate self-reporting by debtors.  Debtors and bankruptcy professionals

who do not fulfill their obligations deserve to be chastised severely.");

*Palmer v. Downey (In re Downey)*, 242 B.R. 5, 13 (Bankr. D. Idaho 1999)

("The function of the requirement of full and complete disclosure . . . is to

ensure accurate and dependable information is provided to the Court,

trustee, and creditors upon which they can rely without the need for

additional inquiry.")  Debtors did not timely disclose their entitlement to

the SS lump sum award and increased monthly benefits as required by the

provisions of their confirmed chapter 13 plan, and as a result, Trustee

questions whether they should receive the benefits associated with

completion of their plan payments.

Regrettably, Trustee's motion to dismiss contains no supporting

citations to either the Code or case law.  However, the Court presumes that

MEMORANDUM OF DECISION – 7

Trustee relies upon § 1307(c), wherein the Court is given discretion to convert or dismiss a bankruptcy case for "cause." The statute includes a non-exhaustive list of eleven "causes" supporting conversion or dismissal. §§ 1307(c)(1) - (11). In this case, the Court assumes Trustee invokes subsection (6), which allows dismissal or conversion in a case where there has been a "material default by the debtor with respect to a term of a confirmed plan." The terms of a confirmed plan are binding on debtors and their creditors. *Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 435 (9th Cir. BAP 1997). Moreover, even though all required monthly payments have been made, a debtor may still be in default as to other terms of the confirmed plan. *See Roberts v. Boyajian (In re Roberts)*, 279 B.R. 396, 399-400 (1st Cir. BAP 2000).

Under the circumstances presented here, it is Trustee's burden to demonstrate there is sufficient cause to dismiss the case under § 1307(c). *In re Cluff*, 2012 WL 1552391, at *3 (discussing the question of allocation of the burden of proof in the § 1307(c) context when debtor's good faith in filing the petition is called into question). Thus, Trustee must prove that

MEMORANDUM OF DECISION – 8

Debtors materially defaulted under the terms of their plan when they failed to disclose the SS award.  In addition, even if Trustee shows that cause to dismiss exists, she must also demonstrate that dismissal of Debtors' case is in the best interests of their creditors and the bankruptcy estate.  *In re Nelson,* 343 B.R. 671, 675 (9th Cir. BAP 2006); *In re Cluff,* 2012 WL 1552391, at *3.

Moreover, even if a material breach of the confirmed plan is shown to have occurred, Congress employed the term "may" in drafting § 1307(c), rather than the obligatory "shall," thus granting the Court discretion in deciding whether to dismiss.  *Sievers v. Green (In re Green),* 64 B.R. 530, 530-31 (9th Cir. BAP 1986) ("An analysis of the language of Section 1307(c) leads to the inevitable conclusion that the decision to dismiss a Chapter 13 is a *discretionary decision* of the trial court.") (emphasis in original); *In re Cluff,* 2012 WL 1552391, at *6 (Bankr. D. Idaho April 30, 2012) ("The Code gives a bankruptcy court discretion to dismiss a case pursuant to § 1307(c) or not."); *In re Hill,* 374 B.R. 745, 749 (Bankr. S.D. Cal. 2007).

MEMORANDUM OF DECISION – 9

Weighing the facts and circumstances surrounding Trustee's

motion, the Court determines that dismissal of Debtors' case is not

warranted here.  While the Court can not speculate about events had

Debtors' counsel not passed away during the pendency of their plan, and

prior to the SS award, that fact is prominent in the Court's analysis of this

predicament.  Based upon its observations of them, it appears that

Debtors are not legally savvy.  And with their bankruptcy attorney gone, it

is not surprising that their reaction to the change in their finances was to

merely call Trustee's office.  While the substance of their phone

communications with Trustee's staff is not known, it seems clear that

Trustee's employees told Debtors to continue to make their plan

payments, regardless of whatever other action they might take, which

Debtors did.  While the Court does not imply that Trustee's assistants were

obliged to personally guide Debtors through the process of amending the

schedules to disclose the SS money, the fact that Debtors made the call

indicates they were not attempting to hide the facts from Trustee.  Debtors

also disclosed the SS award in their tax return, a copy of which they gave

MEMORANDUM OF DECISION – 10

to Trustee when she asked for it.  The Court finds, on this record, Debtors

were not attempting to evade their duties under the plan – they were

simply confused about compliance with the confirmation order.

Debtors have essentially completed their plan payments, and

creditors have received the benefit of those payments.  It would be a harsh

sanction indeed for the Court to now dismiss the case and deny Debtors

the benefit of a discharge.  This is so because, as decreed by Congress, the

SS monies would not be a factor in fixing the amount of Debtors' on-going

plan payments.[5]

---

[5] Because Trustee objected to Debtors' plan, and their plan payments
would not pay their creditors in full, Debtors were obliged to demonstrate that
they were committing all of their projected disposable income to those plan
payments. § 1325(b)(1)(B).  Debtors' projected disposable income is calculated by
taking their current monthly income and subtracting reasonably necessary
monthly expenses. § 1325(b)(2).  Section 101(10A)(B) instructs that current
monthly income excludes amounts received by debtors as benefits under the
Social Security Act.  As such, Debtors' SS benefits are not considered in
determining their disposable income, even though the receipt of those benefit
payments must be disclosed on schedule I.  In other words, that Debtors received
the SS awards would not necessarily require them to increase the amount of their
remaining plan payments.  However, this was not the case prior to October 2005,
when social security benefits were included in the calculation of a debtor's
disposable income.  *In re Hagel*, 184 B.R. 793 (9th Cir. BAP 1995).  After
amendments to the Code following the passage of BAPCPA excluded social
security payments from the current monthly income calculation, some courts,

MEMORANDUM OF DECISION – 11

Of course, Debtors' failure to disclose the Lamb Weston pension

payment is also a concern.  While it is a small amount, and would not have

been of great benefit to creditors, it is troubling that Debtors did not

correctly report it from the beginning.  On the other hand, because

Debtors' error in this regard was a minor one, the Court is not inclined to

rely upon this omission to disregard the five years of plan payments

Debtors have already made.

### Conclusion

Debtors failed to comply with the Court's order confirming their

plan by timely amending their schedules to reflect their receipt of the SS

awards, and thereby potentially jeopardized their right to a discharge.

However, the Code vests discretion in the Court in deciding whether this

---

including this one, still considered a debtor's retention of social security
payments while not paying creditors in full to be a factor in its analysis of
whether a plan was filed in good faith.  *In re Hall*, 442 B.R. 754, 761 (Bankr. D.
Idaho 2010) (in the context of plan modification); *In re Westing,* 2010 WL 2774829
at *2-3 (Bankr. D. Idaho July 13, 2010).  However, this issue has been recently
resolved, at least in the Ninth Circuit, by the case of *Drummond v. Welsh (In re
Welsh*), 711 F.3d 1120, 1135 (9th Cir. 2013) in which it was held that BAPCPA
"forecloses a court's consideration of a debtor's Social Security income . . . as part
of the inquiry into good faith under § 1325(a)."

MEMORANDUM OF DECISION – 12

failure to act justifies dismissal of their case.  All things considered, the

Court declines to dismiss Debtors' case.

By separate order, Trustee's motion to dismiss will be denied.

Dated:  August 19, 2013

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 13